IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANNY CARROLL HOSKINS, #180134<br>Plaintiff, | * | |
| v. | * | Civil Action No. DKC-17-3823 |
| WEXFORD HEALTH SOURCES, INC.<br>Defendant. | * | |

*****

**MEMORANDUM OPINION**

On December 27, 2017, the court received for filing a motion for temporary restraining order from state inmate Danny Carroll Hoskins, who is currently housed at the Western Correctional Institution ("WCI"). The motion alleges that Hoskins receives pain medication[1] for a degenerative disease, bulging and herniated discs with bone spurs, sciatica and strokes, which have caused him major headaches, cramps, spasticity, and ear ringing. He states that he is currently confined to a wheelchair. ECF No. 1, pp. 1-2. Hoskins contends that his pain medication (Tramadol and Baclofen) ran out by December 2, 2017, and, in response to his complaints, he was informed that the Baclofen was being discontinued altogether and that he was being "weaned off" another medication, Neurontin, due to inmate abuse and cost. Hoskins stated that he has increased pain, cramps, and headaches and has suffered the loss of proper mobility on his right side. ECF No. 1, p. 3. As relief, he asks the court to order Wexford immediately to

---

[1] Hoskins asserts that he was placed on Baclofen, Tramadol, Neurontin and Tylenol. Baclofen is a muscle relaxer and anti-spastic agent used to treat muscle spasms and other symptoms in people with injury or disease of the spinal cord. *See* https://www.drugs.com/baclofen.html. Tramadol (Ultram) is a narcotic-like pain reliever used to treat moderate to severe pain. *See* https://www.drugs.com/tramadol.html. Neurontin is an anti-epileptic drug, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain. *See* https://www.drugs.com/neurontin.html. Tylenol is a pain reliever used to treat many conditions such as headaches, backaches, and muscle aches. *See* https://www.drugs.com/tylenol.html.

continue his prescriptions for Baclofen, Neurontin, Tramadol, and Tylenol at prescribed dosages "until this matter can be deemed closed by this Court." *Id*.[2]

The motion was instituted as a new 42 U.S.C. § 1983 action for injunctive relief and Defendant Wexford Health Sources, Inc. ("Wexford") was ordered to file a show cause response. ECF No. 2. Hoskins, who informed the court that he was preparing a § 1983 cause of action against Wexford was granted additional time to file a formal complaint and indigency motion. *Id*.

On March 12, 2018, Wexford filed a show cause response, indicating that prior to December, 2017, Hoskins was receiving the medications Baclofen, Tramadol, Neurontin and Tylenol. ECF No. 8-1.[3] Wexford maintains that Hoskins has not had his pain medications improperly discontinued and, as of the filing date of its show cause response, he remains on a Tylenol and Tramadol regimen, and recently had Naproxen[4] added to his pain treatment, but is no longer receiving Neurontin and Baclofen "pursuant to reasonable and appropriate medical judgment of his health care providers and [Hoskins] continues to receive all necessary pain medications." *Id*.

---

[2] In a filing submitted after the court directed Wexford to file a show cause response, Hoskins asked that the court order Wexford immediately to evaluate him for pain medications and prosthetics for mobility issues and requested copies of medical reports completed by Beverly McLaughlin from his WCI infirmary admission January 9 and 10, 2017, chronic care, and sick call reports beginning on January 1, 2015. ECF No. 3 at 4. Hoskins provides no information to warrant preliminary injunctive relief in this regard.

[3] All citations to the docket reflect the electronic pagination.

[4] Naproxen belongs to a class of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). Other members of this class include ibuprofen (Motrin), indomethacin (Indocin), nabumetone (Relafen) and several others. These drugs are used for the management of mild to moderate pain, fever, and inflammation. *See* https://www.medicinenet.com/naproxen/article.htm#.

The medical record provided by Wexford shows that in August of 2017, Hoskins reported lower back pain, non-radiating from a prior motor vehicle accident and right shoulder pain from a football injury. His Neurontin, Tramadol, Baclofen and Tylenol were renewed. ECF No. 8-1, pp. 3-6. Hoskins was seen in the Chronic Care Clinic and for periodic examinations to monitor his cardiovascular conditions and pain. His Baclofen was discontinued because Hoskins had no muscle spasms and Baclofen interacts with Ultram. ECF No. 8-1, pp. 9-11. On November 29, 2017, a non-formulary drug request form was submitted for Gabapentin (Neurontin) and Tramadol, and was completed on December 7, 2017. ECF No. 8-3, pp. 2-4.

According to Nurse Brenda Reese, the Director of Nursing at WCI, as of November 29, 2017, Neurontin was no longer medically necessary for Hoskins because "Neurontin does not treat any of [Hoskins'] ongoing causes of chronic pain and [Hoskins] did not have any ongoing muscle spasms necessitating the use of Baclofen." ECF No. 8-2, Reese Aff., ¶ 3. Reese affirms that on December 29, 2017, Hoskins was offered, but refused, 60 Tylenol pills. When half that medication was offered to Hoskins for the month of January 2018, they were accepted. *Id.,* Aff., ¶ 6.

Wexford maintains that Hoskins has continued to receive Tramadol for the months of December, 2017 and January, 2018, and in February of 2018, Naproxen was added to Hoskins' pain regimen. ECF No. 8-2, Reese Aff., ¶¶ 6 & 7.

According to Medical Administration Records ("MAR) provided by Wexford, in November, 2017, Hoskins received Neurontin, Tylenol, Tramadol, Baclofen, along with other medications. ECF No. 8-4, pp. 2-3. In December, 2017, he was prescribed Tramadol, Tylenol,

3

and Neurontin. The Baclofen was discontinued. ECF No. 8-4, pp. 4-9. In January, 2018, Hoskins received Neurontin, Tylenol, and Tramadol. *Id.*, pp. 10-11.

Hoskins filed an answer to the show cause response claiming that his Tramadol medication was discontinued before the prescription expired. ECF No. 13. He complains that he receives an inadequate number of prescription tablets to complete the prescription period, and he is forced to follow a burdensome prescription process by submitting a sick-call slip to be "seen and have a new order processed." ECF No. 13. Hoskins disputes Wexford's response, stating that he did not receive his medications for several days in December, 2017 and March, 2018, and his medications were discontinued with his seeing a physician. He contends that he only has two medications for pain, Tramadol and Tylenol, and although he was informed he would be seen in late March, the appointment did not occur. ECF No. 13, pp. 1-5. Wexford's counsel has filed a reply contending that Hoskins' answer confirms their statements regarding his current pain medication regimen and his Naproxen has been discontinued due to Hoskins' history of stroke. Wexford further argues that the MAR submitted shows that Hoskins was receiving his Tramadol in December, 2017. ECF No. 14.

A preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), that requires a movant demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Resources Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other*

4

*grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). A movant must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

In a response supported with copies of Hoskins' medical records and Brenda Reese's affidavit, Wexford denies that Hoskins' pain medications were discontinued improperly. The record shows that Hoskins continues to be treated for his chronic pain, receives medication, and the medications that were discontinued were deemed not medically necessary for him. He cannot show he is likely to succeed on the merits or suffer irreparable injury without the relief he seeks. Hoskins' request to compel his receipt of medications deemed by medical provider to be no longer medically necessary for his treatment and potentially contraindicated, does not serve the the public interest or tip the balance of equities in Hoskins' favor. Consequently, the court will deny Hoskins' request for preliminary injunctive relief.

On March 12, 2018, the same day Wexford filed its show cause response, Hoskins filed a supplemental complaint additionally naming Licensed Practical Nurse Beverly McLaughlin[5] and

---

[5] The court will spell Defendant McLaughlin's last name as it appears in Wexford's filings. ECF No. 10.

WCI Warden Richard J. Graham as defendants. ECF No. 9. Service has been accepted on behalf of McLaughin. ECF No. 10. Service will proceed on Warden Graham.

Hoskins alleges that when seen by McLaughlin in late 2015 to early 2016, she informed him that she was not going to renew his fish oil, skin lotion, Tonaftate (antifungal treatment), selenium sulfide lotion (treatment for dandruff and certain scalp infections), and cholesterol-lowering medication (Lovastatin) for cost-cutting reasons. ECF No. 9, p. 2 & 3-4.

Hoskins claims that he was first seen for a MERSA [sic][6] infection on September 15, 2016, and again seen in October and November of 2016, and was prescribed Tonaftate and Gold Bond Powder. He states that he was transferred to another prison for physical therapy and a physician noted an "outbreak" on his left ear. The area was swabbed and test results proved positive for MRSA. Hoskins claims that he still experiences outbreaks and has never received proper treatment for MRSA. ECF No. 9, pp. 2 & 6.

Hoskins contends that he had always been treated for hypertension and been given cholesterol medication until McLaughlin cancelled it. He states that on January 9 and January 10, 2017, he suffered strokes. Hoskins alleges that when he was taken to the infirmary, McLaughlin diagnosed him as "hypertensive" after ignoring his symptoms of "facial sagging on right side, blurred vision/double vision, severe weakness of entire body, but worse on right side, cramps and severe headache." He appears to state that although McLaughlin acknowledged the

---

[6] It is believed that Hoskins is referring to a Methicillin-resistant Staphylococcus aureus ("MRSA") infection. A MRSA infection is caused by a type of staph bacteria that's become resistant to many antibiotics used to treat ordinary staph infections. *See* https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms.

numbness and weakness to his right side on January 9, 2017, he never saw a physician for his symptoms. ECF No. 9, pp. 2-3. Hoskins claims that when he had his second stroke on January 10, 2017, McLaughlin indicated that he was "faking" and not until another staff member came by was a doctor summoned. He contends that no physicians were available and it was forty-five (45) minutes later that a doctor examined him and ordered him to be transported by ambulance from the prison to a hospital. *Id.*, p. 3.

Hoskins complains that on both days when he had strokes he was not provided blood thinners or additional pain medication. Hoskins attributes his strokes, the permanent loss of strength on his right side, constant severe headaches, cramps and spasms of the right arm and leg, and temporary double vision to the inaction of McLaughlin and other medical staff. *Id.*, p. 4.

In his second primary supplemental claim, Hoskins takes issue with the WCI Administrative Remedy Procedure ("ARP") grievance process. He states that he filed an ARP regarding his access to a personal wheelchair and physical therapy (WCI-0761-17), and he was told that upon his March, 2017 return to WCI he would be provided a wheelchair and physical therapy twice a week. Hoskins contends that he did not receive his own wheelchair until May, 2017[7] and his physical therapy did not commence until June of 2017. Hoskins alleges that on October 1, 2016, he filed an ARP (WCI-2202-16) to the WCI Warden's Office to complain about the inadequate medical treatment he had received for his boils and a rash on his skin. He contends that "for all (3) of my ARPs the Warden's Office failed me miserably." *Id.*, pp. 4-6. In his supplemental complaint Hoskins seeks the following additional relief: to be provided

---

[7] Hoskins states that the wheelchair could not be kept in his cell. ECF No. 9, p. 5.

medical copy work, medical braces, and a "proper" pair of boots, as well as monetary damage. ECF No. 9, pp. 6-8. Wexford, as well as McLaughlin and Graham,[8] the newly named defendants, will be directed to file a response to the supplemental complaint.[9]

Hoskins has now filed a court-ordered motion for leave to proceed *in forma pauperis* (ECF No. 12), which will be provisionally granted subject to the collection of partial filing fees under 28 U.S.C. § 1915(a) & (b).

The court must examine certain documents pursuant to 28 U.S.C. § 1915(a)(2). Specifically, 28 U.S.C. § 1915(a)(2) provides that "[a] prisoner seeking to bring a civil action...without prepayment of fees or security therefor, in addition to filing the [requisite] affidavit....shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint....obtained from the appropriate official of each prison at which the prisoner is or was confined." This information is necessary to the court's computation of the applicable initial partial filing fee as required by 28 U.S.C. § 1915(b)(1).

Hoskins will be required to furnish the prisoner account statement addressed above. To assist him in providing the financial account information to the court, the Finance Officer at WCI will be directed to file a certificate which indicates (1) the average monthly balances and deposits in Hoskins' account for the six-month period preceding December 27, 2017 and (2) the calculated initial filing fee payment.

---

[8] The docket will be modified to add these Defendants.

Lastly, the court will consider Hoskins' recently filed motion for appointment of counsel. ECF No. 17. Hoskins states that he needs counsel to assist him in obtaining affidavits from medical providers, including Beverly McLaughlin, and responding to Defendants. Federal district court judges have discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1), and may consider appointment where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Hoskins has demonstrated the ability to articulate his claims and the claims he presents are not unduly complex. Additionally, it has not been determined if a hearing or discovery will be necessary to the disposition of this case. As there are no exceptional circumstances warranting appointment of counsel at this time, the motion will be denied without prejudice.

A separate Order follows effectuating the rulings set out herein.

Date: May 30, 2018                                /s/
                                         DEBORAH K. CHASANOW
                                         United States District Judge